IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHEL KABEJA,[1] ELINE NYIRAMBANJIKA,
JACQUES MWISENEZA, UWIZEYE NYIRAMWIZA,
MARTIN SHEMA, individually, and JACQUES
MWISENEZA, as Kinship Guardian for Minor Children
Y.M., K.K., K.M., and A.N.,

    Plaintiffs,

vs.                                                        No. 1:20-cv-00189-LF-KK

JKC TRUCKING INC., a foreign company, and
KRZYSZTOF BRODNICKI,

    Defendants.

## ORDER APPROVING SETTLEMENT

THIS MATTER comes before me on the parties' Joint Motion for Approval of the Settlement of Minors' Claims and for the Settlement of Michel Kabeja, an Incapacitated Adult, filed on May 17, 2021. Doc. 72. The parties consented to me to make a final disposition in this case. Docs. 3, 14, 15. I appointed a guardian ad litem ("GAL") for the minor children and Mr. Kabeja (Doc. 70), and I've carefully reviewed the GAL's report (Doc. 75).[2] I conducted a fairness hearing on May 24, 2021, via Zoom. *See* Doc. 76 (clerk's minutes). At the hearing, Dathan Weems appeared on behalf of all plaintiffs. Jacques Mwiseneza, the guardian for Mr. Kabeja and the kinship guardian for the four minor children, also appeared. Jeramy Schmehl

---

[1] The complaint and the first amended complaint both stated that Jacques Mwiseneza brought this action on behalf of Michel Kabeja as his court-appointed temporary guardian. Doc. 1 ¶ 2; Doc. 23 ¶ 2. According to the GAL report, Second Judicial District Court Judge Erin O'Connell appointed Mr. Mwiseneza Permanent Limited Guardian and Limited Conservator for Mr. Kabeja on April 6, 2020. Doc. 75 at 15.

[2] The Court previously found that the GAL, Lucinda R. Silva, Esq., was well qualified to act as GAL in this case. Doc. 70 at 1. A copy of her resume, which outlines her qualifications to act as GAL, is attached to the supplemental briefing filed on May 4, 2021. *See* Doc. 69.

and Joseph E. Blitch appeared on behalf of defendants JKC Trucking, Inc., and Krzysztof Brodnicki. Lucinda R. Silva appeared as the court-appointed GAL for Michel Kabeja and the minor children, Y.M., K.K., K.M., and A.N. Linda Murphree was present as a representative of the proposed trustee for the proposed trusts. Susan Tomita drafted the proposed trust agreements and also was present, as was Ryan Garrison, an investment advisor who would invest the trust assets should investment become appropriate. Eline Nyirambanjinka,[3] Mr. Kabeja's wife and the mother of the minor children, also was present. Ms. Nyirambanjinka was assisted by Marcelin B. Hategekimana, an interpreter who translated the proceedings into Kinyarwanda. For the reasons explained below, I approve the settlement agreement between plaintiffs and defendants as it relates to Michel Kabeja and the four minor children.

The Court reviews settlements involving minor children and incapacitated persons for fairness. *See Thompson v. Maxwell Land-Grant and Railway Company,* 168 U.S. 451, 463–65 (1897). Before approving such an agreement, the Court must ensure that the interests of the incapacitated person and the children will be adequately protected. *See Garrick v. Weaver*, 888 F.2d 687, 693 (10th Cir. 1989) (courts have a general duty to protect the interests of minors); *see also United States v. Reilly*, 385 F.2d 225, 228 (10th Cir. 1967) (When interests of minors are at stake, the trial judge has an obligation to see that the children were properly represented by their representatives and by the Court.); *Salas v. Brigham*, No. 1:08-cv-01184-JB-RLP, Doc. 284 at 3, 2010 WL 11601205, at *2 (D.N.M. Dec. 22, 2010) (unpublished) ("New Mexico courts and federal courts have traditionally supervised settlements benefitting minors and incapacitated

---

[3] The GAL report states that this is the spelling of Ms. Nyirambanjinka's last name as it appears on her government-issued identification. Doc. 75 at 1 n.2. The Court will use this spelling throughout the rest of this order.

adults, reviewing the proposed settlement to ascertain whether the agreement promotes the best interest of the minor or incapacitated beneficiary.").

The plaintiffs in this case are Michel Kabeja and Eline Nyirambanjinka, who are married to each other, and seven of their eight children. Three of the named plaintiffs are their adult children: Jacques Mwiseneza, Uwizeye Nyiramwiza, and Martin Shema. Y.M., K.K., K.M. and A.N. are the minor children of Mr. Kabeja and Ms. Nyirambanjinka. The eighth child is an adult and is not a party to this lawsuit. *See* Doc. 75 at 13.

The report prepared by the GAL outlines in detail the facts of the case and each side's theory of liability. *See* Doc. 75 at 18–23. This case arises out of a vehicular crash that occurred on August 12, 2019. Michel Kabeja was driving his 2013 Chevrolet Silverado 1500 westbound on I-40, just west of Clines Corners, New Mexico. It was just before 5:00 a.m., and he, his wife, three of his adult children, and A.N. were returning to Albuquerque from a trip to Houston. They had run out of gas earlier and had called 911, which resulted in an emergency roadside provider bringing them gas at significant cost. They were advised to stop for gas as soon as possible in Clines Corners, but Mr. Kabeja missed the exit. After he missed the exit, Mr. Kabeja slowed down considerably and moved into the left lane, intending to make a U-turn through the median and return to the eastbound lanes so he could get off the freeway at Clines Corners. When Mr. Kabeja moved into the left lane, a trucker, defendant Krzysztof Brodnicki, was traveling westbound behind Mr. Kabeja at about 80 miles per hour. Mr. Brodnicki initially moved into the left lane to pass Mr. Kabeja, but when Mr. Kabeja moved into the left lane, Mr. Brodnicki swerved to the right to try to avoid a collision but was unsuccessful. Mr. Brodnicki's tractor-trailer, owned by defendant JKC Trucking, Inc., hit Mr. Kabeja's vehicle from behind.

3

The GAL report outlines each plaintiff's damages in detail, which I need not repeat. Mr. Kabeja and his wife suffered catastrophic injuries which left them both permanently quadriplegic and wheelchair bound. *See* Doc. 75 at 24–39. Mr. Kabeja can communicate orally and understands simple concepts, but is mentally and physically incapable of caring for himself and is completely dependent on others to provide for all of his personal care needs. Ms. Nyirambanjinka also is physically incapable of caring for herself and is completely dependent on others to care for her. Fortunately, the adult children who were in the car either were uninjured, or suffered far less serious physical injuries, and they have recovered. A.N. also suffered physical injuries but has since recovered. Y.M., K.K., and K.M. were not in the car and were not involved in the accident. Their damages consist entirely of potential future mental health care expenses and loss of consortium claims related to their parents.

The Court received testimony from the GAL and Mr. Mwiseneza, and it also heard the argument of counsel. I have considered the evidence and argument presented at the hearing, the GAL report, and the basic terms of the proposed settlement, which are outlined in the GAL report and the attached exhibits. I find that the proposed settlement satisfies the four factors set forth in *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984), which the court considers when deciding whether to approve a settlement. These factors are: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; . . . (4) the judgment of the parties that the settlement is fair and reasonable." *Id*. I also find that the settlement is in the best interests of the minor children and Mr. Kabeja. *See Garrick*, 888 F.2d at 693.

I find that the proposed settlement and the total amount of the settlement were fairly and honestly negotiated. To reach a settlement, the parties participated in one formal mediation with Judge Khalsa on October 28, 2020. Before the mediation, plaintiffs made a demand on defendants, and defendants responded. Mr. Weems met with the family and Mr. Mwiseneza before the settlement conference to discuss the family's options. Mr. Mwiseneza and his adult siblings also participated in the settlement conference. Although a settlement was not reached at the settlement conference, the parties continued to negotiate. Each time Mr. Weems received an offer from defendants, he discussed that offer with Mr. Mwiseneza and other members of the family, then responded to defendants. The parties ultimately reached an agreement. The attorneys described the settlement negotiations and mediation process, which show that the settlement was fairly and honestly negotiated. The settlement resulted from both sides recognizing the strengths and weaknesses of the case, the likelihood that the case would involve extensive litigation costs, and that both sides faced risks if the case proceeded to a trial. Mr. Mwiseneza was involved in the discussions and ultimately agreed to the final settlement after consulting with his attorney. Ms. Mwiseneza testified that he believed the settlement was fair and reasonable, that he was not threatened or coerced into agreeing to the settlement, and that he wanted the Court to approve the settlement. He also testified that he understood that the settlement resolves all the family's claims against JKC Trucking, Inc., and Mr. Brodnicki. I find that the settlement was honestly and fairly negotiated.

Having heard from the parties and having reviewed the GAL's report, I also find that serious questions of law and fact place the outcome of this litigation in doubt. There is no question that the issue of comparative fault would go to the jury, and there is a substantial likelihood that the jury would assign a fair amount of fault to Mr. Kabeja. It is conceivable that

5

a jury could find Mr. Kabeja entirely at fault, which would preclude plaintiffs from recovering anything. On the other hand, the damages to Mr. Kabeja and his family are catastrophic, and even if the jury only assigned a small percentage of fault to defendants, the plaintiffs' recovery could be substantial. Given the interplay between the large amount of damages and the role of comparative fault in this case, the outcome of the litigation is far from certain. In addition, even if plaintiffs succeeded in winning a large jury verdict, it's uncertain that they could recover the entirety of any such verdict. Under the proposed settlement, plaintiffs will receive the limits of both the primary insurance carrier and the excess insurance carrier, an upfront payment from JKC Trucking, and then monthly payments from JKC Trucking for a number of years. If JKC Trucking were required to pay a substantial verdict all at once, it could force the company into bankruptcy which could limit the plaintiffs' recovery.

I further find that the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. At the hearing, the GAL explained that the certainty of a lump sum payment now in addition to future payments was far better than the possibility of receiving less or even nothing should the litigation continue. As explained above, the total recovery is in excess of the available insurance coverage, which would not be guaranteed if the case went to trial. Furthermore, the plaintiffs are in immediate need of appropriate housing, and the proposed settlement will provide sufficient funds to meet that need quickly. Appropriate housing will provide a more comfortable place for Mr. Kabeja and his wife to live and will provide more room for the family given that two of the adult children live with the family to help care for their parents and the minor children. A safe, stable, and more comfortable home also will help the minor children succeed in school while living in close proximity to their parents and adult siblings.

The allocation of the funds also is fair and reasonable. As shown in the GAL report, Mr. Kabeja and his wife will receive the largest portion of the settlement proceeds because of the substantial injuries they each sustained. The bulk of their net proceeds will be used to purchase a much-needed home for themselves and their family, and the remainder will be placed in a special needs trust which can be accessed to make their lives more comfortable in the future but will not jeopardize their public benefits. The funds allocated to the minor children are based on each child's age, with the youngest child recovering the most because that child will be deprived of his parents' financial support and must live with their limited physical and mental abilities for the longest portion of his childhood. The three adult children each will receive an equal but smaller percentage of the settlement than the oldest minor child. All the funds for the children—both the adult children and the minors—will be placed in a family trust which can be accessed to maintain the family home. Any excess funds may be used to pay expenses that are necessary or desirable for the health, education, support, and maintenance of the child as an advance against that child's share in the trust.

Once the family trust is no longer necessary, the family residence will be sold and the proceeds from the sale, along with the remaining trust corpus, will be distributed to the children in the relative proportions that each contributed, adjusted for any advance. The allocation of the settlement funds and the structure of the settlement will provide stable housing for the family while Mr. Kabeja and Ms. Nyirambanjinka are living, and also will safeguard the funds to help support the minor children while they are growing up and assist them in early adulthood to pay for higher education or other necessary expenses. I find that the proposed structure of the distribution of the settlement proceeds are in the best interests of the minor children and Mr. Kabeja.

The GAL also reviewed the attorney's fees and litigation costs that will be paid out of the settlement funds. The fee agreement with plaintiffs provides for a percentage of the settlement proceeds that is comparable to agreements in other personal injury cases. The GAL explained that taking this case on a contingency fee basis involved substantial risk, and that Mr. Weems was a zealous advocate with both the experience and expertise necessary to pursue plaintiffs' claims in a way that maximized their recovery. The GAL thought the total costs were a bit low, given the extent of the discovery completed in the case, the extensive medical records that needed to be obtained and reviewed, and the need for multiple experts. The GAL attributed the lower-than-expected costs to Mr. Weems cognizance of the limited insurance funds available and his desire to maximize his clients' recovery. I find that the attorney's fees and costs are reasonable and should be paid from the settlement funds as described in the GAL report. *See* Docs. 75 at 44–46, 75-1. The defendants will pay the GAL fees.

All counsel, the GAL, and Mr. Mwiseneza believe that the settlement is fair and reasonable, and I agree. I therefore GRANT the parties Joint Motion for Approval of the Settlement of Minors' Claims and for the Settlement of Michel Kabeja, an Incapacitated Adult (Doc. 72). I find that the settlement is in the best interests of the minor children and Mr. Kabeja, and that the structure of the distribution of the settlement proceeds also is in the best interests of the minor children and Mr. Kabeja. I find that the *Jones* factors are satisfied. I therefore approve the proposed settlement between plaintiffs and defendants as it relates to Michel Kabeja, an incapacitated adult, and Y.M., K.K., K.M., and A.N., the minor children of Mr. Kabeja and Ms. Nyirambanjinka. Specifically, the total settlement amount is approved, the distribution of the settlement proceeds as outlined in the GAL report is approved, the creation of the trusts as described in the GAL report and Docs. 75-2, 75-3, and 78-1, is approved, and the payment of

plaintiffs' attorney fees and costs as outlined in the GAL report and Doc. 75-1 is approved. Accordingly, the Court orders the creation of and hereby establishes the Michel Kabejo Irrevocable Trust, the Eline Nyirambanjinka Irrevocable Trust, and the Kabeja Family Residential Trust, copies of which are attached to the GAL's report (Docs. 75-2, 75-3, 78-1). The Court further approves the appointment of Urbielewicz Murphree, CPA, PC, as the Trustee of said trusts. Ms. Silva is released from her duties as guardian ad litem, and defendants shall pay her fees. The parties will file closing documents no later than Monday, June 28, 2021, absent a written motion showing good cause for an extension.

**IT IS SO ORDERED.**

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent